UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN BARTHOLOMEW, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOODMAN MANUFACTURING COMPANY, L.P., a Texas Limited Partnership; GOODMAN GLOBAL HOLDINGS, INC., a Delaware Corporation; GOODMAN GLOBAL GROUP, INC., a Delaware Corporation; and DOES 1–50, inclusive,<br><br>Defendants. | No. 2:22-cv-00027-TLN-AC<br><br><br><br>**ORDER** |

This matter is before the Court on Plaintiff Martin Bartholomew's ("Plaintiff") Motion to Remand. (ECF No. 6.) Defendants Goodman Manufacturing Company, L.P. ("Goodman Manufacturing"), Goodman Global Holdings, Inc., and Goodman Global Group, Inc. (collectively, "Defendants") filed an opposition. (ECF No. 10.) Plaintiff filed a reply. (ECF No. 12.) For the reasons set forth below, the Court DENIES Plaintiff's Motion to Remand.

///
///
///
///

1

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was employed by Defendants as a non-exempt employee in Sacramento. (ECF No. 1 at 20.) On November 23, 2021, Plaintiff filed the instant wage and hour class action against Defendants alleging violations of the California Labor Code and California Business and Professions Code in the Sacramento County Superior Court. (*Id.* at 16, 27–33.) Plaintiff alleges Defendants: (1) failed to pay all minimum wages; (2) failed to pay all overtime wages; (3) failed to provide all requisite meal periods; (4) failed to provide all requisite rest periods; (5) provided inaccurate wage statements; (6) failed to timely pay all compensation due and owing upon discharge; and (7) engaged in unfair competition. (*Id.* at 27–33.)

On January 3, 2022, Defendants removed the action to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). (*Id.* at 2.) Defendants claim this action meets the CAFA requirements of class size, minimal diversity, and the amount in controversy. (*Id.* at 4.) On February 2, 2022, Plaintiff filed the instant motion to remand in which he only contests Defendants' asserted amount in controversy. (*See* ECF No. 6.) On February 24, 2022, Defendants filed an opposition. (ECF No. 10.) Plaintiff filed a reply on March 2, 2022. (ECF No. 12.)

### II. STANDARD OF LAW

#### A. Amount in Controversy

A civil action brought in state court, over which the district court has original jurisdiction, may be removed by the defendant to federal court in the judicial district and division in which the state court action is pending. 28 U.S.C. § 1441(a). CAFA gives federal courts original jurisdiction over certain class actions only if: (1) the class has more than 100 members; (2) any member of the class is diverse from the defendant; and (3) the aggregated amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), (d)(5)(B).

Congress enacted CAFA "specifically to permit a defendant to remove certain class or mass actions into federal court" and intended courts to interpret CAFA "expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). As a general rule, removal statutes are to be strictly construed against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

1   However, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin*

2   *Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Nonetheless, "[i]f at any time before final

3   judgment it appears that the district court lacks subject matter jurisdiction, the case shall be

4   remanded" to state court. 28 U.S.C. § 1447(c).

5       A defendant seeking removal under CAFA must file in the federal forum a notice of

6   removal "containing a short and plain statement of the grounds for removal." *Dart Cherokee*, 574

7   U.S. at 83 (quoting 28 U.S.C. § 1446(a)). The notice of removal "need not contain evidentiary

8   submissions," but rather a defendant's "plausible allegation that the amount in controversy

9   exceeds the jurisdictional threshold" suffices. *Id.* at 84, 89. When "a defendant's assertion of the

10  amount in controversy is challenged . . . both sides submit proof and the court decides, by a

11  preponderance of the evidence, whether the amount-in-controversy requirement has been

12  satisfied." *Id.* at 88. "The parties may submit evidence outside the complaint, including

13  affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in

14  controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm*

15  *Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

16      "[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy

17  its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable

18  ones." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015). "CAFA's

19  requirements are to be tested by consideration of real evidence and the reality of what is at stake

20  in the litigation, using reasonable assumptions underlying the defendant's theory of damages

21  exposure." *Ibarra*, 775 F.3d at 1198. Then "the district court must make findings of

22  jurisdictional fact to which the preponderance standard applies." *Dart Cherokee*, 574 U.S. at 89

23  (internal citation omitted).

24  **III.    ANALYSIS**

25      Plaintiff argues Defendants' asserted amount in controversy of $5,650,802.73 is

26  unsubstantiated because it is devoid of proper evidentiary support and based on inflated

27  assumptions. (ECF No. 6 at 6.) Plaintiff also challenges the declaration of Kristi Pittman

28  ("Pittman Declaration"), Vice President of Human Resources for Goodman Manufacturing, that

3

Defendants submitted with the notice of removal. (*Id.* at 6–7.) In response, Defendants argue the underlying assumptions are reasonable and grounded in evidence and Plaintiff's allegations. (ECF No. 10 at 7.) Defendants further argue Plaintiff failed to meet his burden to present contrary evidence to refute Defendants' calculations, and the Pittman Declaration is sufficient to support removal. (*Id.* at 10–12.) In the reply, Plaintiff renews his earlier arguments and he also argues he was not required to present evidence with his motion. (ECF No. 12 at 6.)

The Court will first address whether Plaintiff needed to submit evidence with his motion and the sufficiency of the Pittman Declaration before turning to whether the amount in controversy requirement is satisfied.

A.  Contrary Evidence in a Motion to Remand

Defendants argue Plaintiff failed to meet his burden by not presenting contrary evidence or alternative calculations for the amount in controversy. (ECF No. 10 at 10–11.) Plaintiff responds by arguing Defendants misstate the evidentiary burden and that Plaintiff was not required to present evidence to contest Defendants' claimed amount in controversy. (ECF No. 12 at 7–9.)

Defendants point to language in *Dart Cherokee* stating "both sides submit proof" and a court decides "by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." (ECF No. 10 at 10 (citing *Dart Cherokee*, 574 U.S. at 88).) However, a plaintiff may factually attack a defendant's amount in controversy allegations by challenging the underlying assumptions and without submitting evidence. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020) (a factual attack on jurisdictional allegations "need only . . . mak[e] a reasoned argument as to why any assumptions on which they are based are not supported by evidence"); *Lacasse v. USANA Health Scis., Inc.*, No. 2:20-cv-01186-KJM-AC, 2021 WL 107143, at *2 (E.D. Cal. Jan. 12, 2021) (outside evidence is not necessary in a factual attack on a defendant's jurisdictional allegations).

Accordingly, Plaintiff was not required to present contrary evidence with his motion to factually attack Defendants' asserted amount in controversy.

///

B.    The Pittman Declaration

Plaintiff contends the Pittman Declaration is conclusory and unsupported and provides minimal data. (ECF No. 6 at 6, 7, 11, 13, 14, 16.) In the opposition, Defendants assert the Pittman Declaration is a sufficient evidentiary basis for determining the amount in controversy and that Defendants were not required to submit any timekeeping or payroll records with their notice of removal. (ECF No. 10 at 11–12.)

Plaintiff cites extensively to *Garibay v. Archstone Cmtys. LLC*, 539 F. App'x 763 (9th Cir. 2013) to argue the Pittman Declaration is insufficient evidence. (ECF No. 6 at 9, 11, 14, 15, 16.) However, "*Garibay* is an unpublished opinion and therefore nonbinding." *Sanchez v. Abbott Labs.*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at *3 (E.D. Cal. June 30, 2021). Moreover, several courts have recognized the inconsistency between *Garibay* and the Ninth Circuit's published opinion in *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395 (9th Cir. 2010).[1] *E.g.*, *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1030 n.4 (C.D. Cal. 2017); *Patel*, 58 F. Supp. 3d at 1041 n.4 (N.D. Cal. 2014). This Court similarly finds "*Garibay* is of limited utility here because it contains little discussion of . . . the appropriate evidence that the defendants should have produced to establish the amount in controversy." *Sanchez*, 2021 WL 2679057, at *3.

Courts in the Ninth Circuit have found declarations from knowledgeable personnel to be sufficient evidence for determining the amount in controversy under CAFA. *See Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1186–87 (E.D. Cal. 2020) (finding a declaration from defendant's "Associate Director of the Operational Finance Department" based on "his personal knowledge of [d]efendant's business records" to be sufficient); *Andrade v. Beacon Sales Acquisition, Inc.*, No. CV 19-06963-CJC(RAOx), 2019 WL 4855997, at *4 (C.D. Cal. Oct. 1, 2019) (finding "a

---

[1] In the reply, Plaintiff argues *Lewis* is distinguishable because it did not deal with Labor Code violations and the evidence provided by Defendants is unlike that provided by the *Lewis* defendant. However, courts continue to apply *Lewis* in motions to remand involving alleged Labor Code violations. *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1040-41, 1041 n.4 (N.D. Cal. 2014); *Franke v. Anderson Merchandisers LLC*, No. CV 17-3241 DSF (AFMx), 2017 WL 3224656, at *4 (C.D. Cal. July 28, 2017) ("Though *Lewis* is not a wage and hour case, it is instructive here.").

declaration from a knowledgeable employee based on her analysis of regularly kept and created business records" to be sufficient); *Alvarez v. Off. Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (holding "that the evidence [d]efendant provides through [its Lead Human Resources Business Partner's] declaration is acceptable for purposes of determining the CAFA amount in controversy").

In the instant case, the Pittman Declaration establishes the following for the putative class: (1) the number of hourly employees; (2) the regular schedule of the full-time hourly employees; (3) the total workweeks worked by the hourly employees; (4) the average hourly base rate for the hourly employees; and (5) the number of employees that separated from their employment during the relevant time period. (ECF No. 1-1 at 2–3.) Pittman declares that her declaration is based upon her personal knowledge and records kept in the ordinary course of business by Goodman Manufacturing. (*Id.*)

Based on the information in the Pittman Declaration — and in the absence of any evidence from Plaintiff to the contrary — the Court concludes the declaration lays a sufficient evidentiary foundation to determine the amount in controversy.[2]

### C. Amount in Controversy

#### i. Unpaid Overtime Claim

In the removal notice, Defendants submit an estimate of $265,844.18 for this claim based on the following calculation: $21.10 hourly rate × 1.5 overtime premium × 16,799 workweeks × 0.5 hours. (ECF No. 1 at 8.) Plaintiff argues Defendants' estimate is based on the unreasonable assumption of thirty minutes of unpaid overtime per workweek for off-the-clock COVID-19 temperature screenings. (ECF No. 6 at 10–11.) Plaintiff further argues that Defendants calculate unpaid overtime for the COVID-19 screenings during the entire class period rather than starting on March 2020 when the pandemic began. (*Id.* at 11.) In response, Defendants argue their

---

[2] Plaintiff asserts the Pittman Declaration does not provide any timekeeping records or a payroll summary. (ECF No. 6 at 11.) However, Defendants were not required to submit documentary evidence in addition to the Pittman Declaration. *See De Vega v. Baxter Healthcare Corp.*, 507 F. Supp. 3d 1214, 1217 n.1 (N.D. Cal. 2019) (concluding "submission of copies of underlying documents [was] not critical" when the payroll manager's declarations setting out the employment data "la[id] an adequate foundation for the facts asserted").

1  assumption is reasonable because of Plaintiff's vague allegations of unpaid wages and COVID-19
2  screenings. (ECF No. 10 at 14–15.) Defendants assert their calculation is specifically based on
3  workweeks between March 2020 and the present. (*Id.* at 14.)
4        A defendant is not required to "review extensive employee records . . . to ascertain the
5  exact violation rate for the purposes of removal." *Heatley v. Lin Rogers Elec. Contractors, Inc.*,
6  No. SACV 22-000042-CJC(KESx), 2022 WL 715156, at *3 (C.D. Cal. Mar. 10, 2022) (citing
7  *Ritenour*, 228 F. Supp. 3d at 1031); *see also Sanchez*, 2021 WL 2679057, at *4. Whether the
8  plaintiff's complaint places limits on the claims alleged is relevant to the reasonableness of the
9  defendant's assumed violation rate. *See Heatley*, 2022 WL 715156, at *3 ("District courts have
10 routinely found such [violation rate] calculations reasonable when a plaintiff has placed no limits
11 on such claims in their complaint . . . .").
12       Plaintiff's Complaint alleges employees "were not fully compensated for all . . . overtime
13 wages" because Defendants instituted a "uniform policy/practice" of COVID-19 temperature
14 checks that employees were not clocked in for or paid for. (ECF No. 1 at 20–21.) The Court
15 does not find Plaintiff describing employees as not being fully compensated for all overtime
16 wages to be a limit that makes Defendants' assumption unreasonable. *See Heatley*, 2022 WL
17 715156, at *4 (finding the complaint's description of the violation rates as "often" or "not
18 provided with at all" was not a limit on the scope of the allegations). Additionally, Plaintiff does
19 not provide an alternative assumption or submit any rebuttal evidence. (*See* ECF No. 6 at 10–11.)
20       Courts have found an assumption of one unpaid overtime hour per employee per
21 workweek to be reasonable when a plaintiff alleges a policy or practice of failing to pay overtime
22 wages. *See Garza v. WinCo Holding, Inc.*, No. 1:20-cv-01354-JLT-HBK, 2022 WL 902782, at
23 *6 (E.D. Cal. Mar. 28, 2022) (finding one unpaid overtime hour per workweek was a reasonable
24 assumption due to the policy and practice allegations); *Andrade*, 2019 WL 4855997, at *3–4
25 (finding two unpaid overtime hours per workweek was a reasonable assumption due to the policy
26 and/or practice allegations). Therefore, Defendants' assumption of thirty minutes of unpaid
27 overtime per employee per workweek is reasonable due to Plaintiff's policy and practice
28 allegations. Moreover, Defendants show they only used workweeks starting March 2020 in their

1  amount in controversy calculation. (ECF No. 1 at 8.) Accordingly, Defendants have
2  satisfactorily shown the unpaid overtime claim establishes an amount of controversy of
3  $265,844.18.

*ii.     Meal Period Violations Claim*

In the removal notice, Defendants submit an estimate of $1,383,527 for this claim based on the following calculation: $21.10 hourly rate × 32,785 workweeks × 2 meal period premiums.[3] (ECF No. 1 at 9.) Plaintiff argues that Defendants assume, without evidence, there were two meal period violations per workweek for all 32,785 workweeks. (ECF No. 6 at 12–14.) In the opposition, Defendants argue their meal period violation assumption is reasonable due to the allegations in the Complaint and the contents of the Pittman Declaration. (ECF No. 10 at 16–18.)

Plaintiff's Complaint alleges employees were "often" prevented from taking compliant meal periods due to Defendants' unlawful policies and practices. (ECF No. 1 at 22.) The Court does not find Plaintiff's description of the meal period violation rate as "often" to be a limit that makes Defendants' 40% violation rate unreasonable. *See Heatley*, 2022 WL 715156, at *4.

This Court has previously held a 20% to 60% violation rate for meal period violations to be reasonable. *See Kincaid*, 2022 WL 597158, at *4; *Sanchez*, 2021 WL 2679057, at *4–5. Defendants' 40% violation rate fits squarely within this range. Additionally, Plaintiff did not provide an alternative violation rate or submit any rebuttal evidence. (*See* ECF No. 6 at 12–14.) "Plaintiff cannot simply sit silent and take refuge in the fact that it is Defendant[s'] burden to establish the grounds for federal jurisdiction. This is especially the case since the knowledge in question — how often Plaintiff claims [he] was [denied meal periods] — is uniquely within Plaintiff's possession." *Patel*, 58 F. Supp. 3d at 1042. Thus, Defendants' meal period violation rate is reasonable and Defendants have satisfactorily shown the meal period violations claim establishes an amount of controversy of $1,383,527.

///

---

[3] The two meal period premiums per workweek equate to a 40% meal period violation rate based on the full-time employees' schedule of forty hours per workweek over five workdays. (*See* ECF No. 1-1 at 2); *Kincaid v. Educ. Credit Mgmt. Corp.*, No. 2:21-cv-00863-TLN-JDP, 2022 WL 597158, at *4 (E.D. Cal. Feb. 28, 2022).

*iii.*     *Rest Period Violations Claim*

In the removal notice, Defendants submit an estimate of $1,383,527 for this claim based on the following calculation: $21.10 hourly rate × 32,785 workweeks × 2 rest period premiums.[4] (ECF No. 1 at 9.)  Plaintiff argues that Defendants assume, without evidence, there were two rest period violations per workweek for all 32,785 workweeks.  (ECF No. 6 at 12–14.)  In the opposition, Defendants argue their rest period violation assumption is reasonable due to the allegations in the Complaint and the contents of the Pittman Declaration.  (ECF No. 10 at 16–18.)

Plaintiff's Complaint alleges employees were "often" unable to take compliant rest periods because Defendants did not relieve employees of all duties during rest periods.  (ECF No. 1 at 22–23.)  As before, the Court does not find Plaintiff's description of the rest period violation rate as "often" to be a limit that makes Defendants' 20% violation rate unreasonable.  *See Heatley*, 2022 WL 715156, at *4.

This Court has previously held a 20% to 60% violation rate for rest period violations to be reasonable.  *See Kincaid*, 2022 WL 597158, at *4.  Defendants' 20% violation rate is at the bottom of this range.  Additionally, Plaintiff did not provide an alternative violation rate or submit any rebuttal evidence.  (*See* ECF No. 6 at 12–14); *Patel*, 58 F. Supp. 3d at 1042 (noting the plaintiff's failure to submit an alternative estimate for the amount in controversy in a motion to remand).  Thus, Defendants' rest period violation rate is reasonable and Defendants have satisfactorily shown the rest period violations claim establishes an amount of controversy of $1,383,527.

*iv.*     *Wage Statement Violations Claim*

In the removal notice, Defendants submit an estimate of $826,400 for this claim based on the following: (1) there were approximately 10,478 wage statements issued to employees during the relevant time period; (2) there was a 100% violation rate for the wage statements; and (3) California Labor Code § 226(e) provides a $50 penalty per employee for initial violations and a

---

[4] The two rest period premiums per workweek equate to a 20% rest period violation rate based on the full-time employees' schedule of forty hours per workweek over five workdays.  (*See* ECF No. 1-1 at 2); *Branch v. PM Realty Grp., L.P.*, 647 F. App'x 743, 746 n.6 (9th Cir. 2016).

$100 penalty per employee for subsequent violations, not to exceed to a $4,000 penalty cap per employee. (ECF No. 1 at 10.) Plaintiff argues Defendants unreasonably assume a 100% violation rate. (ECF No. 6 at 14.) In response, Defendants argue the 100% violation rate is supported by the allegations in Plaintiff's Complaint. (ECF No. 10 at 18–19.)

Plaintiff alleges Defendants' wage statements uniformly failed to state the employer's name and address. (ECF No. 1 at 31.) If the alleged employer name and address error is true, then every issued wage statement would constitute a violation of California Labor Code § 226 and would result in penalties. *See Ramirez v. Carefusion Res., LLC*, No. 18-cv-2852-BEN-MSB, 2019 WL 2897902, at *4 (S.D. Cal. July 5, 2019) (finding a 100% wage statement violation rate to be reasonable where the plaintiff alleged the wage statements did not comply with all requirements, such as by failing to indicate the employer's name and address). Because of the alleged employer name and address error on the wage statements, the Court finds the 100% violation rate to be reasonable. Accordingly, Defendants have satisfactorily shown the wage statement violations claim establishes an amount of controversy of $826,400.

### v.   Waiting Time Penalties Claim

In the removal notice, Defendants submit an estimate of $661,344 for this claim based on the following calculation: (126 separated full-time employees × 30 days × 8 hours × $21.10 per hour) + (2 separated part-time employees × 30 days × 6 hours × $20 per hour) + (4 separated temporary employees × 30 days × 8 hours × $19 per hour).[5] (ECF No. 1 at 11.) Plaintiff argues Defendants unreasonably assume 131 employees suffered a maximum recovery period of thirty days, that all full-time employees worked eight-hour shifts, all part-time employees worked six-hour shifts, and all temporary employees worked eight-hour shifts. (ECF No. 6 at 15–17.) Defendants argue their calculation is reasonable because of the Complaint's allegations and the

---

[5] The Court notes a discrepancy in Defendants' calculation. The Pittman Declaration states there are 131 separated employees. (ECF No. 1-1 at 3.) However, Defendants' calculation indicates 132 separated employees, a figure composed of 126 full-time employees, two part-time employees, and four temporary employees. (ECF No. 1 at 11.) For the reason set forth below, the Court does not include the two part-time employees and four temporary employees in the amount of controversy estimate for waiting time penalties. Therefore, the Court need not resolve this discrepancy.

derivative nature of Plaintiff's claim.  (ECF No. 10 at 20.)

It is reasonable to assume maximum waiting time penalties where a plaintiff asks for the maximum statutory penalty of thirty days of wages.  *Avila*, 432 F. Supp. 3d at 1188; *see also Nunes v. Home Depot U.S.A., Inc.*, No. 2:19-cv-01207-JAM-DB, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (holding it was reasonable to assume maximum waiting time penalties where the complaint demanded up to thirty days of wages as penalties and made broad allegations of violations).

Plaintiff alleges that Defendants are liable for maximum waiting time penalties of thirty days of wages.  (ECF No. 1 at 32.)  Moreover, given Plaintiff's broad allegations of violations, "it is reasonable to assume the [separated] class members suffered at least one violation (e.g., one missed meal or rest [period]) and were therefore not paid all wages owed upon [separation]." *Nunes*, 2019 WL 4316903, at *3.  Therefore, the Court finds it is reasonable to assume maximum waiting time penalties of thirty days of wages.

Defendants' use of eight-hour shifts for full-time employees in the calculation is reasonable because it is supported by the work schedule for full-time employees stated in the Pittman Declaration.  (ECF No. 1-1 at 2.)  However, Defendants have not produced any evidence of the shift lengths for the part-time employees or temporary employees.  (*See* ECF No. 1-1.) Therefore, the Court will reduce the waiting time penalties calculation by not including the two part-time employees and four temporary employees.  *See Avila*, 432 F. Supp 3d at 1187 (reducing the waiting time penalties calculation where the evidence did not support the defendant's use of an eight-hour shift per day figure).  Accordingly, Defendants have satisfactorily shown the waiting time penalties claim establishes an adjusted amount of controversy of $638,064.

### vi.   Attorneys' Fees

In the removal notice, Defendants submit an estimate of $1,130,160.55 for attorneys' fees based on the following calculation: $4,520,642.18 amount in controversy from the alleged claims × 25%.  (ECF No. 1 at 13.)  Plaintiff argues Defendants' estimate should be disregarded or reduced because it is highly exaggerated and does not account for whether the underlying claims allow for recovery of attorneys' fees.  (ECF No. 6 at 17–18.)  In the opposition, Defendants argue

the 25% figure is reasonable and should be applied to the total recovery because Plaintiff seeks attorneys' fees for the unfair competition claim, a claim that is derivative of Plaintiff's other claims. (ECF No. 10 at 21–22.) Defendants also submit a declaration providing instances where Plaintiff's counsel sought and received at least 25% of the total recovery in prior wage and hour class action cases. (ECF No. 10 at 22; ECF No. 10-1 at 11–13, 19.) In the reply, Plaintiff renews his argument that Defendants' attorneys' fees estimate is inflated, but he does not address Defendants' argument regarding the request for attorneys' fees on the unfair competition claim. (ECF No. 12 at 12–13.)

"[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). Additionally, "the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence." *Id.* at 796. "A 25% fee recovery is the 'benchmark' level for reasonable attorneys' fees in class action cases." *Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-cv-09955-BLF, 2022 WL 1210402, at *8 (N.D. Cal. Apr. 25, 2022) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).

The Court will not disregard Defendants' estimate of attorneys' fees as Plaintiff requests. *See id.* (declining to disregard a defendant's attorneys' fees estimate because of *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989 (9th Cir. 2022)); *Evers v. La-Z-Boy Inc.*, No. 21-cv-2100-LL-BLM, 2022 WL 2966301, at *10 (S.D. Cal. July 27, 2022) (same). Additionally, because Plaintiff requests attorneys' fees in connection with the unfair competition claim (ECF No. 1 at 33), but his reply does not address Defendants' argument regarding attorneys' fees for that claim, the Court deems Plaintiff to have conceded Defendants' argument.[6] *See Plummer v. Camarillo*, No. CV 19-7489 PSG (AFMx), 2019 WL 8226106, at *6 (C.D. Cal. Dec. 23, 2019) ("Arguments to which no response is supplied are deemed conceded."). Therefore, the Court

---

[6] Plaintiff requests attorneys' fees in connection with his unfair competition claim pursuant to California Code of Civil Procedure § 1021.5. (ECF No. 1 at 33.) Attorneys' fees sought pursuant to § 1021.5 in a class action may be included in determining the amount in controversy for CAFA. *Sanchez v. Russell Sigler, Inc.*, No. CV 15-01350-AB (PLAx), 2015 WL 12765359, at *7 (C.D. Cal. Apr. 28, 2015).

considers the total amount in controversy from Plaintiff's claims in determining the amount in controversy from attorneys' fees.

Defendants show Plaintiff's counsel has requested and received attorneys' fees of at least 25% of the total recovery in other wage and hour class actions. (ECF No. 10 at 22; ECF No. 10-1 at 11–13, 19.) This showing is "probative of the reasonableness of [Defendants'] assumptions insofar as [it] reflect[s] that [Plaintiff's] counsel has sought, has received approval for, and has been awarded attorneys' fees [equal to or] in excess of 25% in recent [wage and hour] cases." *Vasquez v. RSI Home Prod., Inc.*, No. 8:20-cv-01494-JWH-JDEx, 2020 WL 6778772, at *10 (C.D. Cal. Nov. 12, 2020).

As found above, the amount in controversy for Plaintiff's claims is composed of: (1) $265,844.18; (2) $1,383,527; (3) $1,383,527; (4) $826,400; and (5) $638,064. Therefore, the Court finds the amount in controversy is $4,497,362.18 before consideration of attorneys' fees. Accordingly, attorneys' fees in the amount of nearly $503,000 — approximately 11% of the amount in controversy shown by Defendants — would be sufficient to satisfy the amount in controversy requirement under CAFA. *See Cabrera v. S. Valley Almond Co., LLC*, No. 1:21-cv-00748-AWI-JLT, 2021 WL 5937585, at *11 (E.D. Cal. Dec. 16, 2021). The Court finds it is reasonable to assume that attorneys' fees will exceed 11% of the amount in controversy in a putative wage and hour class action like the instant action. *See id.*

Accordingly, the Court finds Defendants have shown by a preponderance of the evidence that the amount in controversy in this case exceeds $5 million as required by CAFA.

### IV.   CONCLUSION

For the aforementioned reasons, the Court hereby DENIES Plaintiff's Motion to Remand. (ECF No. 6.)

IT IS SO ORDERED.

**DATED: September 19, 2022**

Troy L. Nunley
United States District Judge